Parker L. **HANCOCK**, Warden, New Hampshire State Prison et al., Respondents, Appellants,

v.

Charles **WHITE**, Petitioner, Appellee.

No. 6844.

United States Court of Appeals First Circuit.

June 6, 1967.

**480**

Norman E. D'Amours, Asst. Atty. Gen., with whom George S. Pappagianis, Atty. Gen., was on brief, for appellants.

Gilbert Upton, Concord, N. H., with whom Arthur Sutherland, Cambridge, Mass., and Richard N. Pearson, Boston, Mass., were on brief, for appellee.

Before ALDRICH, Chief Judge, WOODBURY, Senior Circuit Judge, and COFFIN, Circuit Judge.

WOODBURY, Senior Circuit Judge.

At White's trial in the New Hampshire Superior Court for Cheshire County in February, 1963, the State was allowed over objection to introduce testimony by the Sheriff of Cheshire County and the County Attorney of incriminating statements volunteered to them by White while he was in their custody after indictments had been returned against him for kidnapping, aggravated assault and robbery. White was found guilty by a jury and sentenced. Judgment of conviction and sentence was affirmed on appeal. State v. White, 105 N.H. 159, 196 A.2d 33 (1963), cert. denied, White v. New Hampshire, 379 U.S. 854, 85 S.Ct. 103, 13 L.Ed.2d 57 (1964). An original petition for *habeas corpus* was later dismissed. White v. Hancock, 106 N.H. 172, 207 A.2d 435 (1965).

The incriminating statements perhaps amounting to a confession which were admitted in evidence were made during an automobile trip with the officers following an extradition proceeding in Vermont, where White had been arrested, to Keene, the county seat of Cheshire County, New Hampshire, where he was arraigned on the indictments the following morning. Although White had been represented by court-appointed counsel in the extradition proceeding in Vermont, at the time of the trip he did not have and had not requested counsel in the criminal proceeding pending against him in New Hampshire.

The court below after an evidentiary hearing as directed by this court on a previous appeal, White v. Hancock, 1 Cir., 355 F.2d 262 (1966), found on clearly adequate evidence that White by his own admission knew that he did not have to talk to the county officers.[1] But the court found that the State had not shown

---

[1] White, as this court pointed out in its previous opinion, supra, was "no novice." White at the time was 58 years old and had been in trouble with the law since

he was 14 or 15. As an adult he had served substantial sentences in the state prisons of Minnesota, New Jersey, New York and Massachusetts, always on pleas

by clear and convincing evidence that White either knew or had been told of his right to the advice of counsel, court-appointed if necessary, before doing so. On the basis of this latter finding and this court's statement on the previous appeal following citation of McLeod v. Ohio, infra, that it regarded "the law as now settled that after indictment the obligation is upon the police to inform a defendant of his rights to silence and to court-appointed counsel," the court below vacated the judgment of conviction and sentence imposed upon White in the New Hampshire Superior Court and directed his discharge from custody unless the State gave him a new trial within 60 days. The State appealed on behalf of Warden Hancock. We affirm on McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), rehearing denied 382 U.S. 874, 86 S.Ct. 15, 15 L.Ed.2d 117 (1965), summarily reversing State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), on the authority of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

McLeod was indicted on October 3, 1960, for first degree murder. Eight days later, on October 11th, before he had procured counsel or the court had appointed counsel for him, he voluntarily made an oral confession to a deputy sheriff and an assistant prosecuting attorney while he was riding around with the officers in an automobile looking for the gun used in the holdup. Testimony of the oral confession was admitted over objection at McLeod's trial by jury. He was found guilty and sentenced to life.

The Supreme Court of Ohio summarily dismissed McLeod's appeal as of right "for the reason that no debatable constitutional question is involved." State of Ohio v. McLeod, 173 Ohio St. 520, 184 N.E.2d 101 (1962). The Supreme Court granted certiorari and without opinion remanded for "consideration in light of" Massiah v. United States, supra. McLeod v. Ohio, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964).

The Supreme Court of Ohio wrote an opinion on this remand in which it distinguished McLeod from Massiah on the facts, pointing out that McLeod, unlike Massiah, had not been interrogated by the officers, nor had the officers practiced any deception on him. Two justices dissented. They thought that by the remand the Supreme Court of the United States meant to give the Supreme Court of Ohio an opportunity to reverse on Massiah. And they also pointed out that McLeod was not arraigned until October 14, when counsel was assigned to him, and that this delay in his arraignment violated Ohio statutory law. Certiorari was again granted and this time the Supreme Court without opinion reversed on Massiah as appears above.

Massiah, when he was out on bail after indictment and after he had retained counsel, was deliberately and designedly interrogated in the absence of his counsel by a codefendant who, unknown to Massiah, had agreed to cooperate with government agents and had been prompted and instructed by them as to the course the interrogation should take. The conversation between the codefendants was electronically monitored by government agents in a car near by. In holding evidence of incriminatory statements made by Massiah in the course of his conversation with his supposed ally and friend constitutionally inadmissible at his trial the Court at page 207 of 377 U.S., page 1203 of 84 S.Ct. said: "All that we hold is that the defendant's own incriminating statements, obtained by federal agents *under the circumstances here disclosed* (italics supplied), could not constitution-

of guilty, sometimes entered after consultation with court-appointed counsel and sometimes not. He had also been sentenced a number of times in Massachusetts and Vermont for a variety of minor offenses. Moreover, the Supreme Court of New Hampshire in its opinion on White's original petition for *habeas* *corpus*, which White elected to prosecute *pro se*, described White as having "no small degree of education" and as "possessed of a keen mind and an unusual knowledge, especially for a layman, of criminal law and its most recent developments."

ally be used by the prosecution as evidence against *him* at his trial."

This language as in State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), has often been interpreted as meaning that the exclusionary rule of *Massiah* was not meant to apply to all incriminating statements made under any circumstances by an accused without counsel after indictment but applied only to such statements when induced or deliberately elicited by officers or their agents from an accused after indictment and in the absence of counsel. See as illustration United States v. Accardi, 342 F.2d 697 (C.A.2, 1965); United States v. Gardner, 347 F.2d 405 (C.A.7, 1965); Stowers v. United States, 351 F.2d 301 (C.A.9, 1965); and Beatty v. United States, 377 F.2d 181, decided by the Court of Appeals for the Fifth Circuit May 2, 1967.

■■ The action of the Court in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), reversing State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), on *Massiah*, however, shows that the *Massiah* rule is not limited to *Massiah* "circumstances" but applies to exclude post-indictment incriminating statements of an accused to government agents in the absence of counsel even when not deliberately elicited by interrogation or induced by misapprehension engendered by trickery or deception. And the case at bar is indistinguishable from *McLeod* on the facts for it is clear that White's statements were not procured by interrogation but were volunteered, and he was not imposed upon by any false statements, trickery, chicanery or subterfuge.[2] Thus

the Court's final action in *McLeod* establishes that although it had said in *Massiah* that it was only holding constitutionally inadmissible the statements of an accused "under the circumstances here disclosed," nevertheless, as the dissenting justices predicted, the rule of that case also applies more broadly to cases involving neither interrogation nor any form of deceit or deception.

The question remains whether the rule of *Massiah* applies retroactively to the case at bar.

■ The date of McLeod's trial does not appear in the reports. But the precise date is not important for obviously he must have been tried at some time between October 14, 1960, when he was arraigned, and June 20, 1962, when the Supreme Court of Ohio dismissed his appeal for want of a debatable constitutional question, and thus his trial must have taken place at least approximately two years before May 18, 1964, when *Massiah* was decided. On that date, however, McLeod's case had not become "final" in the sense of that word as used in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965),[3] for it was then pending in the Supreme Court of Ohio on the first grant of certiorari on June 22, 1964, remanding for consideration "in light of" *Massiah* handed down about a month before.[4] Thus the second action of the Court on May 24, 1965, reversing State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349 (1964), on Massiah v. United States, establishes that the rule of *Massiah*, unlike the rules of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384

---

2. White admitted talking about his case in the course of the automobile trip but denied making the incriminating statements attributed to him by the officers. He said that he only initiated conversation with the officers in an attempt to make what he called a "deal" with respect to recommendation for sentence if he pleaded guilty.

3. In *Linkletter* the Court held that the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081

(1961), does not apply to cases which had become final before that case was decided and at page 622, of 381 U.S., page 1734, 85 S.Ct. in footnote 5 the Court said: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in Mapp v. Ohio."

4. The second and full opinion of the Supreme Court of Ohio was handed down on December 29, 1964.

U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), see Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966), applies at least to cases which had not become "final" in the *Linkletter* sense of the word. Nor had White's case become final in the *Linkletter* sense when *Massiah* was handed down on May 18, 1964, for the Supreme Court of New Hampshire affirmed White's conviction on December 3, 1963, and certiorari thereto was not denied until October 12, 1964, some five months after *Massiah*. We therefore have no occasion to consider the possibility that the *Massiah* rule may be fully retroactive, that is, retroactive to cases which had become final in the *Linkletter* sense at the time *Massiah* was decided. It is enough that on *Massiah's* date White's case like McLeod's was still under judicial consideration.

We are not unaware that in two circuits *Massiah* has been held to apply only prospectively. In United States ex rel. Romano v. Fay, 360 F.2d 389 (C.A.2, 1966), cert. denied sub nom., Romano v. Follette, 385 U.S. 1020, 87 S.Ct. 725, 17 L.Ed.2d 557 (1967), decided before Johnson v. State of New Jersey, supra, the court so held by applying the rationale of Linkletter v. Walker, supra, and Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). See also the case involving a preindictment statement, United States ex rel. Molinas v. Mancusi, 370 F.2d 601 (C.A.2, 1967). And in Lyles v. Beto, 363 F.2d 503 (C.A.5, 1966), on the Supreme Court's remand, 379 U.S. 648, 85 S.Ct. 613, 13 L.Ed.2d 552 (1965), "for reconsideration in light of" *Massiah*, the court, after Johnson v. State of New Jersey, supra, held in a brief per curiam opinion that the holding in that case, that the rules of *Escobedo* and *Miranda* did not affect trials begun before the dates of those decisions, ruled *Massiah* also. Relying as we do upon McLeod v. Ohio we cannot agree with the Second and Fifth Circuits in the *Molinas* dictum and in *Lyles* that the rule of *Massiah* applies only prospectively from the date of the

decision. We do not disagree with the result reached in those cases, however, for in both of them the state court convictions had long become final in the *Linkletter* sense by the time *Massiah* was decided.

Affirmed.